UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| PACIFIC INSURANCE COMPANY, ET AL., | ) ) ) | NO. CV-05-075-JLQ |
| Plaintiffs, | ) ) ) ) | MEMORANDUM OPINION AND ORDER ON WIGA'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: STATUTORY DEFENSES |
| v. | ) ) ) | |
| CATHOLIC BISHOP OF SPOKANE, ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

BEFORE THE COURT is Third-Party Defendant Washington State Guaranty Association's (hereinafter WIGA) Motion For Partial Summary Judgment Re: Statutory Defenses (Ct. Rec. 89). **Mary R. DeYoung** represents WIGA. **James R. Murray** and **Mark A. Wilner** represent the Defendant, Catholic Bishop of Spokane (hereinafter "Diocese").

INTRODUCTION

In this motion, WIGA seeks partial summary judgment from the court, declaring the following:

(1)  WIGA is not obligated to pay any claims against the Diocese that were first filed with WIGA after June 13, 2004, because those claims are not a "covered claim" under R.C.W. 48.32. et seq.;

(2)  WIGA is not obligated to pay any claims for attorney fees under *Olympic Steamship Co., Inc. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991);

(3)  For each "covered claim" established by the Diocese, pursuant to R.C.W. 48.32.060, the maximum amount payable by WIGA is $299,900;

(4)  The Diocese must demonstrate compliance with the exhaustion requirement of R.C.W. 48.32.100(1) for each claim sought against WIGA; and

(5) For each "covered claim" established by the Diocese, pursuant to

R.C.W. 48.32.100(1), WIGA is entitled to reduce its payment obligation by the amount the Diocese recovers from solvent insurers.

To varying degrees, the Diocese objects to all portions of WIGA's motion. First, the Diocese does not oppose WIGA's motion as to J.N. and L.K., but does reserve the right to challenge the statute of limitations issue as to other unknown claims that might arise in the future. Second, the Diocese contends that WIGA is not exempted from paying *Olympic Steamship* fees. Third, the Diocese concedes that under 48.32.060(1)(a) WIGA's liability for each "covered claim" is limited to $299, 900, but objects to any broader ruling by the court, such as capping WIGA's liability for all claims and all forms of relief at $299,900. Fourth, the Diocese argues that it would be premature for the Court to make determinations concerning the exhaustion or offset provisions of § 48.32.100(1). If those issues should arise, the Diocese contends that they should be resolved in post-judgment proceedings, after a determination of each party's liability.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. United States Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1975). Rather, the opposing party

1    must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

2                                    FACTUAL BACKGROUND

3           As WIGA is the party moving for partial summary judgment, the evidence and

4    inferences therefrom are viewed in the light most favorable to the Diocese. The facts

5    are undisputed except where otherwise stated.

6           Home Indemnity Company (hereinafter "Home") provided liability insurance to

7    the Diocese from February 1, 1982 until February 1, 1985 with two consecutive

8    policies. Policy No. ISTP192685 ran from February 1, 1982 until February 1, 1984,

9    and Policy No. ISTP199450 ran from February 1, 1984 until February 1, 1985. The

10   policies are subject to limits of $500,000 per occurrence. (WIGA. St. Fact ¶ 1).

11   According to the Diocese, its preceding policies were provided by Continental

12   Insurance Company (hereinafter "CNA") from February 1, 1979 until February 1, 1980,

13   and Aetna Insurance Company (hereinafter "Aetna") from February 1, 1981 until

14   February 1, 1982. After Home's 1982-1985 policies, CNA again provided coverage

15   from February 1, 1985 until February 1, 1988. (WIGA St. Fact ¶¶ 9-10).

16          On June 13, 2003, the Merrimack County, New Hampshire Superior Court

17   declared Home insolvent and entered an Order of Liquidation. (WIGA Exh. A). The

18   order provided a deadline of one year from the date of the order to file claims. (WIGA

19   Exh. A ¶ bb). Upon Home's insolvency, WIGA assumed responsibility for "covered

20   claims" against the Diocese under the Home policies, pursuant to RCW 48.32 et seq.

21   (WIGA St. Fact ¶ 3). As of June 13, 2004, the one-year deadline for filing claims, six

22   claims filed by J.W., B.N., B.W., T.C., P.J., and D.W., alleging incidents of sexual

23   abuse occurring during Home's 1982-85 policy periods, were noticed by the Diocese to

24   WIGA. (Id. at ¶¶ 4-5). On January 24, 2005, claims filed by J.N. and L.K. against the

25   Spokane Diocese alleging sexual abuse were noticed to WIGA by the Diocese, after the

26   June 13, 2004, deadline. (Id. at ¶ 6).

27          According to WIGA, the "Claimant List" that the Diocese provided to the

28   insurance parties on October 25, 2005, indicated that the Diocese had tendered the

claims of eight claimants to multiple insurers, including WIGA.  The claims of J.W., J.P., L.K., and D.W. were tendered to CNA and WIGA; the claims of B.N., B.W., and J.N. were tendered to CNA, Aetna, and WIGA, and; T.C.'s claim was tendered to Aetna and WIGA  (WIGA Stat. Fact ¶ 8).  The Diocese contests this representation stating that "alleged sexual abuse that occurs within Home's policy periods have been tendered <u>only</u> to Home (i.e., WIGA)."  (Diocese St. Fact ¶ 1).  The Diocese explains that if it tendered a claim involving the same claimant to multiple insurance carriers, each claim is based on incidents of sexual abuse occurring within each carrier's policy period. Some of the alleged abuse stretched over multi-year periods, overlapping  policies and carriers.  (Id. at ¶ 1).

DISCUSSION

## I. Claims Barred by the Statute of Limitations

According to the Washington Insurance Guaranty Association Act, R.C.W. 48.32 et seq., WIGA shall be "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent."  WASH. REV. CODE § 48.32.060(1)(b) (2005).  It must "pay covered claims to the extent of the association's obligation and deny all other claims."  § 48.32.060(d).  The Act defines "covered claims," in pertinent part, to be

> an unpaid claim, including one for unearned premiums, that arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 and (i) the claimant or insured is a resident of this state at the time of the insured event; or (ii) the property from which the claim arises is permanently located in this state...[but] does not include any claim filed with the association subsequent to the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer.

§ 48.32.030(4).

WIGA asks this Court to order that J.N.'s and L.K.'s claims, submitted after June 13, 2004, do not qualify as "covered claims," thereby barring recovery from WIGA. While no Washington court has interpreted this statutory deadline for filing claims, the

statutory language is clear and unambiguous.  *See Wash. Dept. of Ecology v. Campbell & Gwinn, L.L.C.*, 43 P.3d 4, 9-10 (Wash. 2002)(stating that "if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent").  Any claim filed with WIGA after the final date set by the court for filing claims against the liquidator or receiver of an insolvent insurer is not a "covered claim."  Other state courts interpreting similar provisions in other states have come to the same conclusion.  *See, e.g., Satellite Bowl, Inc. v. Mich. Prop. & Cas. Guar. Ass'n*, 419 N.W.2d 460, 462 (Mich. Ct. App. 1988)(stating that "the association is obligated under the act to accept only claims timely filed . . ."); *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Ass'n*, 634 N.E.2d 611, 615 (Ohio 1994)(stating that "[t]he language of [the statute] is mandatory and does not provide for any discretion . . . to entertain claims that have been filed after the final date set for filing claims in a liquidation proceeding); *Cannelton Ind., Inc. v. Aetna Cas. & Sur. Co. of Am.*, 460 S.E.2d 18, 19 (W. Va. 1994)(stating that "a covered claim shall not include any claim filed with the guaranty fund after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer").  The Diocese does not oppose WIGA's motion as to the claims of J.N. and L.K.

WIGA goes on, however, to ask the court to find that any *future* claims tendered to WIGA are not "covered claims."   In a footnote, the Diocese objects to this aspect of the motion and asks to "reserve its rights" on this issue for any future unknown claims. Presumptively, however, any future claim not yet tendered to WIGA would be filed after the statutory deadline and therefore would not constitute a "covered claim." Accordingly, the court **GRANTS** WIGA's Motion For Summary Judgment as to this claim.

## II.  *Olympic Steamship* Attorney Fees

WIGA also seeks an Order barring, as a matter of law, the Diocese from recovering attorney fees under the rule of *Olympic Steamship Co., Inc. v. Centennial Ins. Co.*, 811 P. 2d 673  (Wash. 1991).  Under *Olympic Steamship*, 811 P.2d at 681, an

insured is allowed to "recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured." WIGA argues that since the applicable WIGA statutes of the state of Washington do not specifically provide for the recovery of attorney fees from WIGA, such fees are prohibited.

WIGA, in its Memorandum in Support of Partial Summary Judgment, (Ct. Rec. 89 at 4), cites the case of *Vaughn v. Vaughn*, 597 P. 2d 932, 934 (1979), an intermediate appellate court decision, for the proposition that WIGA is not obligated to step into the shoes of the insolvent carrier. WIGA fails to cite to this court the subsequent decision of the Washington State Supreme Court in *Seattle First National Bank v. WIGA*, 804 P. 2d 1263, 1270 (1991) nor the Washington Supreme Court case of *Prutzman v. Armstrong*, 579 P. 2d 359 (1978) holding that the function of WIGA is to "step into the shoes" of an insolvent insurer to protect state residents affected by the insolvency of an insurer. *See also WIGA v. Dep't. of Labor & Indus.*, 859 P. 2d 592, 593 (1993) (stating that WIGA "stands in the shoes" of the insolvent insurer). The same direct holding of requiring WIGA to "step into the shoes" of the insolvent insurer is found in the Washington Court of Appeals decisions of *Wash. Ins. Guar. Ass'n. v. McKinstry Co.*, 784 P. 2d 190, 194 (Wash. Ct. App. 1990) and *Seattle-First Nat'l .Bank v. WIGA*, 972 P. 2d 1282, 1287 (Wash. Ct. App. 1999).

The Revised Code of Washington 48.32.060(1)(b) declares, contrary to the statutory provisions of some other states, that WIGA shall:

> Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, **duties and obligations** of the insolvent insurer as if the insurer had not become insolvent. (Emphasis supplied).

WIGA contends that an insured of an insolvent insurer can only recover the portion of the claim specifically set forth in the WIGA statutes. That position is contrary to the interpretations of the courts of the state of Washington that WIGA "steps into the shoes" of the insolvent insurer. Consistent with those interpretations, in 1999, the Court of Appeals of the state of Washington in *Seattle-First National Bank v.*

1    *WIGA*, 972 P. 2d 1282 (1999), held that an insured was entitled to recover prejudgment

2    interest on its claim against WIGA, even though the WIGA statutes and the insolvent

3    insurer's contract did not contain a specific provision therefor.

4          It is beyond dispute that WIGA is obligated to "stand in the shoes" and perform

5    all of the obligations of the insolvent insurer, subject only to the specific limitations of

6    the WIGA statutes enacted and amended by the Washington State Legislature.  In

7    *Olympic Steamship*, 811 P. 2d at 681, the Washington Supreme Court, in a unanimous

8    *en banc* decision, held that when an insured is obligated to bring suit against an insurer

9    to recover on the coverage provided in a policy, the insured, **as part of the insurance**

10   **contract**, is entitled to recover its attorney fees against the insurer.

11         When the Legislature of the state of Washington adopted the WIGA statutes in

12   1971the Legislature clearly knew how to limit the liability of WIGA if that was its

13   intent.  For example, the WIGA statutes specifically limit the liability of WIGA to

14   $300,000 or the face amount of the policy, whichever is less, on each claim.  In

15   addition, the Washington Legislature, in R.C.W. 48.32.030(4), specifically limited

16   claims against WIGA to those presented within the time set by the liquidating court for

17   the insolvent insurer.  *Olympic Steamship* was decided by the Washington Supreme

18   Court in 1991.  As recently as 2005, the Washington Legislature amended the WIGA

19   statutes.  Were it the intent of the Legislature that *Olympic Steamship* attorney fees

20   should not be recovered against WIGA, the legislature would have said so after the 14

21   year old decision in *Olympic Steamship*.

22         Since WIGA is obligated to "step into the shoes" of the insolvent insurer and

23   pursuant to R.C.W. 48.32.060(1)(b) "be deemed the insurer to the extent of its

24   obligation on the covered claims and to such extent shall have all rights, duties, and

25   obligations of the insolvent insurer as if the insurer had not become insolvent," the

26   partial Motion For Summary Judgment of WIGA that it is not responsible for *Olympic*

27   *Steamship* attorney fees is **DENIED**.

28   **III.  Maximum Amount Payable by WIGA**

ORDER - 7

Revised Code of Washington 48.32.060 limits WIGA's liability to the "amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars [but] . . . [i]n no event shall the association be obligated to a policyholder or claimant in an amount in excess of the face amount of the policy from which the claim arises." § 48.32.060(1)(a)(i); *Marks v. Wash. Ins. Guar. Ass'n*, 94 P.3d 352, 353 (Wash. Ct. App. 2004).  Because Home's policies are limited to $500,000 per occurrence, WIGA seeks to have this Court enter an Order declaring that its statutory liability is "limited to $299,900 per 'covered claim.'" (Ct. Rec. 91 at 14).  The Diocese opposes a broader ruling limiting liability for all claims and all forms of relief at $299,900, but this court does not read WIGA's motion this broadly.  Moreover, WIGA, in its reply, explains that it "did not ask this court to rule on the number of 'covered claims' presented in this matter, to decide what relief is encompassed by a 'covered claim,' or to quantify the total amount of WIGA's liability to the Diocese."  (Ct. Rec. 118 at 5).  Therefore, because the Diocese does not oppose the limited nature of this portion of WIGA's motion, the court **GRANTS** WIGA's Motion For Summary Judgment, limiting its liability to $300,000 per "covered claim."

**IV.  R.C.W. 48.32.100(1) Exhaustion and Offset Requirements**

Anticipating that the Diocese will argue for joint and several liability against WIGA and other potentially liable insurers, WIGA seeks an Order from this court declaring that the Diocese must first demonstrate compliance with both the exhaustion and offset requirements of R.C.W. 48.32.100(1).  Section 48.32.100(1) states that

> [a]ny person having a claim against his or her insurer under any provision in his or her insurance policy which is also a covered claim shall be required to exhaust first any right under that policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of a recovery under the claimant's insurance policy.

§ 48.32.100(1); *see also Prutzman v. Armstrong*, 579 P.2d 359, 362 (Wash. 1978)(en banc)(stating that "[t]o obtain compensation from the WIGA . . . a party must first comply with R.C.W. 48.32.100(1) . . . ").  As explained in *Wash. Ins. Guar. Ass'n v. McKinstry Co.*, however, "the statute provides for a reduction of WIGA's statutory

obligation only where a claimant has another source of recovery for the claim *against the insolvent insurer*, not where a claimant has *any* other source of recovery." 784 P.2d 190, 192 (Wash. Ct. App. 1990)(emphasis in original)(holding that WIGA cannot offset payments by a primary insurer when it is standing in the shoes of an insolvent excess insurer).  In other words, the exhaustion and offset requirements are only applicable if there is a "covered claim" for which both WIGA and a solvent carrier are potentially liable.

No Washington court has addressed how the exhaustion and offset provisions apply to consecutive, rather than concurrent, insurers.  To support its motion, WIGA cites *Shepard v. Wash. Ins. Guar. Ass'n*, 84 P.3d 940 (Wash. Ct. App. 2004) and *Proios v. Bokeir*, 863 P.2d 1363 (Wash. Ct. App. 1993).   Both of these cases, where the plaintiffs were required to exhaust all coverage available under their own first-party medical, UIM and PIP policies before looking to WIGA, involved concurrent polices and a single temporal event.  This case is distinguishable because it involves consecutive policies and continuous abuse.

Essentially, the Diocese opposes this part of the motion with a ripeness argument, stating that WIGA is asking this court for a premature legal ruling because the jury could make factual determinations that would render the exhaustion and offset provisions inapplicable.  Determining whether the facts of a case constitute a sufficient "controversy" so as to satisfy Article III, Section 2, of the United States Constitution and permit declaratory judgment can be a difficult proposition.  A standard for determining whether such a controversy exists, offered by Justice Murphy in *Maryland Cas. Co. v. Pacific Coal & Oil Co.* 312 U. S. 270, 273 (1941) is "whether the facts alleged, under all circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Part and parcel with its ripeness argument, the Diocese contends that the jury must first determine when the incidents of abuse occurred and which insurer's policies are

implicated.  The Diocese argues that:

> Although the Diocese also has noticed CNA and/or Aetna for each of the eight claims for which WIGA may be responsible, this was done because available information suggested an abusive event occurred during policy years of several different insurers.  However, the jury may find that all covered loss occurred from 1982 to 1985 when <u>only</u> the Home policy was in effect . . . [This was done because] [i]n many instances, the exact date of the alleged abuse is unclear as the majority of claimants alleging abuse within Home's policy years have not been deposed . . .

(Ct. Rec. 114 at 5-6)  By showing that the jury must determine when the loss occurred for each claim of abuse relevant to this motion, the Diocese has raised an issue of material fact sufficient to withstand summary judgment.   Accordingly, the court **DENIES** WIGA's Motion For Summary Judgment as to the exhaustion and offset claims.

## SUMMARY OF CONCLUSIONS

1.  WIGA's Motion For Partial Summary Judgment regarding claims being barred by the statute of limitations is **GRANTED**.

2.  WIGA's Motion For Partial Summary Judgment seeking an order barring the Diocese from recovering *Olympic Steamship* fees against WIGA is **DENIED**.

3.  WIGA's Motion For Partial Summary Judgment limiting its liability to $300,000 per "covered claim" is **GRANTED**.

4.  WIGA's Motion For Partial Summary Judgment regarding R.C.W. 48.32.100(1) exhaustion and offset requirements is **DENIED**.

**IT IS SO ORDERED.**  The Clerk is hereby directed to enter this Order and to furnish copies to counsel.

**DATED** this 29th day of December, 2005.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE